ANDERSON, Circuit Judge:
Under Alabama law, independent candidates for political office may obtain ballot access, meaning the right to have their name listed on the election ballot, by filing a petition signed by at least "three percent of the qualified electors who cast ballots for the office of Governor in the last general election for the state, county, district, or other political subdivision in which the candidate seeks to qualify." Ala. Code. § 17-9-3(a)(3). In Swanson v. Worley, 490 F.3d 894 (11th Cir. 2007), this Court held that Alabama's 3% signature requirement for ballot access is constitutional as applied during a regular election cycle. Id. at 912.
On December 17, 2013, Alabama held a special election to fill a vacancy in its First United States House of Representatives District. Appellee James Hall ran as an independent candidate in that election. Due to Hall's failure to meet the 3% signature requirement, Hall's name did not appear on the special election ballot. Hall sued Appellant, the Alabama Secretary of State, pursuant to 42 U.S.C. § 1983, claiming that the 3% requirement as applied during the special election violated his First and Fourteenth Amendment rights.[1]
After denying Hall's motion for a preliminary injunction (in large part because Hall had not shown a substantial likelihood of success on the merits and because ballots had already been mailed in accordance with the Uniformed and Overseas Citizens Absentee Voting Act), the district court *1297 granted summary judgment in favor of Hall, issuing a declaratory judgment that Alabama's 3% signature requirement for ballot access violates the First and Fourteenth Amendments when enforced during any off-season special election for a U.S. House of Representatives seat in Alabama, for which: "(a) the vacancy is announced less than 124 days prior to the petition deadline and (b) the date of the special election is announced less than 57 days prior to the petition deadline." Appellant, the Secretary, brings this appeal. Appellant argues that: (1) the case is moot; and, alternatively, (2) Alabama's 3% signature requirement is constitutional in the specific circumstances challenged by Hall. As discussed below, we conclude that this case is moot. Thus, we do not address the constitutionality of Alabama's 3% signature requirement as applied during the special election circumstances presented here.
I.
"Mootness is a question of law, which this court reviews de novo." Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1262 (11th Cir. 2006). "The doctrine of mootness derives directly from the [Article III] case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.' " Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam) (quoting Adler v. Duval Cty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997) ). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Id. at 1336 (quoting Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216-17 (11th Cir. 2000) ). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." Id.
There is an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)"[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine [i]s limited to the situation where two elements combine[ ]: (1) the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again."[2] Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed. 2d 350 (1975) (per curiam); Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1343 (11th Cir. 2014) (adopting the same two-prong test). "The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." Al Najjar, 273 F.3d at 1336.
"The 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks." Storer v. Brown, 415 U.S. 724, 737 n.8, 94 S.Ct. 1274, 1282 n.8, 39 L.Ed. 2d 714 (1974). Regarding the application of the exception to as-applied challenges, the plaintiff need not show that every "legally relevant" characteristic in the case will recur. See Fed. Election Comm'n v. Wis. Right To Life, Inc., 551 U.S. 449, 463, 127 S.Ct. 2652, 2663, 168 L.Ed. 2d 329 (2007).
*1298 Rather, it is sufficient that there is a reasonable expectation that "materially similar" circumstances will recur. See id. at 463-64, 127 S.Ct. at 2663 (holding that the plaintiff's challenge to a law making it a crime to run ads mentioning political candidates within a certain number of days before an election was not moot based on the plaintiff's assertion that it intended to run " 'materially similar' future targeted broadcast ads mentioning a candidate" before future elections (citation omitted) ).
II.
To determine whether this case is capable of repetition, we confine our inquiry to whether there is a reasonable expectation that Hall will be faced with meeting the 3% ballot-access requirement during an Alabama special election for a U.S. House seat. The scope of the relief sought by Hall, and the relief granted by the district court, was thus limited. Moreover, meeting the 3% requirement for an office other than a U.S. House seat could require Hall to collect a materially different number of signatures than the number that he was required to collect in 2013. Thus, a special election for an office other than a U.S. House seat would not subject Hall to the same or a materially similar action to the action that he faced in 2013. We must therefore determine whether there is a reasonable expectation that Hall will have an opportunity during his life to run or vote in a special election for a U.S. House seat in Alabama. We conclude that there is not.
Hall resides in Alabama's First House District and there is no indication that he intends to move. Before 2013, the last special election in Alabama's First House District was in 1935. Although it is possible that there will be an unexpected vacancy in Alabama's First House District during Hall's life, reasonable expectation requires more than a theoretical possibility. Similarly remote is the possibility that Hall will run or vote in a special election for another Alabama House seat. The record indicates that, recently, special elections for any U.S. House seat in Alabama have occurred only about every twenty years.[3] Hall contends that he wants to run in any special election for a U.S. House seat in Alabama regardless of his residence. But, as more fully discussed below, the prospect of Hall running to represent a district in which he does not live is far-fetched. And Hall can only vote in the district in which he resides. Given the infrequency and unpredictable nature of special elections for U.S. House seats, it is unreasonable to expect Hall to move to another Alabama district at a time that allows him to run or vote in such an election in that district. See Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183-84, 71 L.Ed. 2d 353 (1982) (per curiam) ("The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the [capable-of-repetition] test ...."); Al Najjar, 273 F.3d at 1336. Thus, this case does not satisfy the second prong of the capable-of-repetition-yet-evading-review exception to mootness. There is no reasonable expectation that Hall, the same complaining party, will again be subject to the Alabama 3% requirement as an independent candidate or voter in a special election for a U.S. House seat.
*1299 III.
We recognize that some of the Supreme Court's early election law cases suggest that the same complaining party rule may apply in a rather relaxed manner in the context of election cases. See Storer, 415 U.S. at 737 n.8, 94 S.Ct. at 1282 n.8. In Storer, the Supreme Court addressed several challenges to California's election laws as applied during a regular election cycle. Id. at 727, 94 S.Ct. at 1277. For example, California law barred independent candidates from gaining ballot access if the candidate had been affiliated with a political party within the previous twelve months. Id. at 726, 94 S.Ct. at 1277. Two of the challengers, Storer and Frommhagen, sought to run as independent candidates for California's Sixth and Twelfth Congressional Districts in the 1972 election. Id. at 727 n.3, 94 S.Ct. at 1278 n.3. They were barred from obtaining ballot access because both had been registered Democrats until early 1972. Id. at 728, 94 S.Ct. at 1278.
Before reaching the merits of their challenge, the Court found that the case was not moot because "the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections." Id. at 737 n.8, 94 S.Ct. at 1282 n.8. The Court did not explicitly address whether there was a reasonable expectation that Storer, Frommhagen, or any of their supporters would be subjected to the same action again. The Storer opinion did not address whether these candidates expressed their intent to change their affiliation again in the future or their intention to run again as independent candidates and seek ballot access. Nevertheless, the Supreme Court addressed the merits of the case, recognizing that "[t]he construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges" to California's election laws. Id. The Storer opinion also involved two other challengers, Hall and Tyner, members of the Communist Party, who sought ballot access to run as independent candidates for President and Vice President of the United States. Id. at 727-28, 94 S.Ct. at 1278. The Supreme Court addressed the merits of their challenge also. Id. at 738, 94 S.Ct. at 1283.
The instant case, however, is materially different than Storer. Storer addressed ballot access restrictions during a regular election cycle. Thus, the issue presented in that case would almost certainly repeat every few years, presenting the Storer politicians with repeated opportunities to run. In stark contrast, the issue presented by Hall will not repeat during every election cycle in Alabama. Rather, the record indicates that, with this particular U.S. House seat, the last special election was in 1935, and the record indicates that, recently, a special election for any U.S. House seat in Alabama has occurred only about every twenty years. The issue presented in this case will therefore recur, if at all, with far less frequency than the issue presented in Storer and other cases that involve challenges to election laws as applied during regular election cycles. Given this distinction, the application of the same complaining party rule in ordinary election law cases has limited import here.
IV.
It is true that the language used by Storer -i.e., that the case was not moot because the "effects [of the challenged burdens] on independent candidacies ... will persist as the California statutes are applied in future elections," id. at 737 n.8, 94 S.Ct. at 1282 n.8 -could be construed to suggest that the Court was dispensing with any requirement that the same complaining party will be subject to the same *1300 action again. Relying on Storer, Hall argues that the same complaining party rule does not apply in the context of election cases. For several reasons, we reject Hall's argument; we do not believe Storer should be construed as dispensing with the same complaining party rule.
First, Storer is consistent with a relaxed application of the same complaining party rule. The Court did not explicitly address whether the four challengers would again seek to run as independent candidates and run afoul of the restriction that kept them off of the ballot, but it is not unreasonable to expect that politically active persons, like the challengers, would do so in another general election. As indicated below, cases construing the boundaries of the relaxation of the same complaining party rule in election cases do not always require affirmative proof that the same complaining party intends to continue similar participation in political activities and challenge again the restriction at issue; rather, the cases require only that there be a reasonable expectation under all the circumstances that the same complaining party will continue such activities and again be subject to the challenged restriction.
A second reason that we do not believe that Storer dispensed with the same complaining party rule is as follows. Supreme Court cases after Storer have consistently applied the same complaining party rule in evaluating whether a case falls within the capable-of-repetition-yet-evading-review exception to mootness. DeFunis v. Odegaard, 416 U.S. 312, 314, 319-20, 94 S.Ct. 1704, 1705, 1707, 40 L.Ed. 2d 164 (1974) (per curiam) (holding that the plaintiff's challenge to the law school's admission procedure was moot because the plaintiff, who "brought the suit on behalf of himself alone, and not as the representative of any class," was enrolled at the law school and would "complete his law school studies at the end of the term for which he [was] registered regardless of any decision th[e] Court might reach on the merits of th[e] litigation"); Richardson v. Ramirez, 418 U.S. 24, 36, 94 S.Ct. 2655, 2662, 41 L.Ed. 2d 551 (1974) (recognizing in the election law context that "if the case were limited to the named parties alone, it could be persuasively argued that there was no present dispute on the issue of the right to register [to vote] between the three named individual respondents in this Court and the one named petitioner here" but holding that the case was not moot because the "individual named plaintiffs brought their action in the Supreme Court of California on behalf of themselves and all other ex-felons similarly situated"); Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed. 2d 532 (1975) (holding that the case was not moot because the plaintiff represented a certified class but opining, "If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal."); Weinstein, 423 U.S. at 149, 96 S.Ct. at 349 (holding that the plaintiff's challenge to North Carolina's parole procedures was moot because the plaintiff had been paroled and stating, " Sosna decided that in the absence of a class action, the 'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."); Neb. Press Ass'n v. Stuart, 427 U.S. 539, 547, 96 S.Ct. 2791, 2797, 49 L.Ed. 2d 683 (1976) (holding that the case was not moot because the dispute between the state and the Nebraska Press Association, among others, regarding a restraining order on the press during a criminal *1301 trial was capable of repetition); Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 187-88, 99 S.Ct. 983, 992, 59 L.Ed. 2d 230 (1979) (applying the Weinstein two-prong test and determining that the State Board's challenge to the Chicago Board's unilateral settlement regarding a 1977 special mayoral election in Chicago was moot because the Chicago Board's entry into the settlement was not "a policy it had determined to continue," "a consistent pattern of behavior," or "a matter of statutory prescription"); Murphy, 455 U.S. at 482-84, 102 S.Ct. at 1183-84 (quoting the Weinstein two-prong test and holding that the case was moot because there was "no reason to believe that [the plaintiff] Hunt w[ould] once again be in a position to demand bail before trial"); Honig v. Doe, 484 U.S. 305, 319-20, 108 S.Ct. 592, 602, 98 L.Ed. 2d 686 (1988) (holding that the challenge to the school district's rule allowing the unilateral exclusion of disabled children for dangerous or disruptive conduct was not moot as to one of the plaintiffs because there was a reasonable expectation that that plaintiff "would once again be subjected to a unilateral 'change in placement' for conduct growing out of his disabilities"); Meyer v. Grant, 486 U.S. 414, 417 n.2, 108 S.Ct. 1886, 1890 n.2, 100 L.Ed. 2d 425 (1988) (applying the Weinstein two-prong test in the election law context and holding that the case was not moot where the proponents of a ballot initiative continued to advocate for its adoption); Int'l Org. of Masters, Mates & Pilots v. Brown, 498 U.S. 466, 473, 111 S.Ct. 880, 885, 112 L.Ed. 2d 991 (1991) (holding in the context of union elections that the individual plaintiff's challenge to a union election rule was not moot "even though respondent's campaign literature has been distributed and even though he lost the election by a small margin," and noting that "[r]espondent has run for office before and may well do so again"); Norman v. Reed, 502 U.S. 279, 288, 112 S.Ct. 698, 705, 116 L.Ed. 2d 711 (1992) (holding in the election law context that a challenge to the petitioners' ability to appear on the 1990 ballot under the Harold Washington Party name was not moot even though the 1990 election had passed because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints"); Wis. Right To Life, Inc., 551 U.S. at 462-64, 127 S.Ct. at 2662-63 (quoting the Weinstein two-prong test in the campaign ad election context and holding that the plaintiff's challenge to a law prohibiting targeted broadcasts within a certain number of days before an election was not moot because the plaintiff intended to run materially similar targeted broadcast ads before future elections); Davis v. Fed. Election Comm'n, 554 U.S. 724, 735-36, 128 S.Ct. 2759, 2769-70, 171 L.Ed. 2d 737 (2008) (quoting the Weinstein two-prong test in the campaign finance election law context and holding that the plaintiff's challenge to certain campaign contribution limits was not moot where the plaintiff made a public statement expressing his intent to self-finance another bid for a House seat).
As the foregoing cases demonstrate, the Supreme Court has indicated repeatedly that the capable-of-repetition-yet-evading-review exception to mootness should be tested by the Weinstein two-pronged test (including the same complaining party rule) in cases generally. And, particularly relevant for the instant case, several Supreme Court cases have applied the same complaining party rule in the election law context, as indicated in the parenthetical notations above. For example, the Court in Meyer v. Grant sets out the two-pronged Weinstein test, holds that both prongs are satisfied, and explains that the plaintiffs (who challenged state law restrictions to ballot access) continued to advocate for the adoption of the state constitutional amendment at issue and thus it was "reasonable *1302 to expect that the same controversy will recur between these two parties, yet evade meaningful judicial review." 486 U.S. at 417 n.2, 108 S.Ct. at 1890 n.2. The fact that the Supreme Court has expressly found that the same complaining party rule is satisfied in election law cases counsels against interpreting Storer as dispensing with the rule. See also Arcia, 772 F.3d at 1343 (in the election context, this Court applied the two-pronged Weinstein test, including the same complaining party rule).
Finally, the Supreme Court's other early election cases are consistent with our interpretation of Storer. For example, in Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed. 2d 1 (1969), independent candidates for the offices of electors of the President and Vice President of the United States challenged an Illinois ballot access signature requirement. Id. at 815, 89 S.Ct. at 1494. The Court held that the case was not moot because the law would continue to control future elections, "as long as Illinois maintains her present system as she has done since 1935." Id. at 816, 89 S.Ct. at 1494. Although the Court did not explicitly address the likelihood that the same independent candidates would seek to run again, there was a reasonable expectation that they would do so, given that they were politically active individuals who would have the opportunity to do so every four years. Also, in Brockington v. Rhodes, 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed. 2d 209 (1969) (per curiam), the Court held that the plaintiff's ballot access challenge was moot because the election was over and the plaintiff sought only a limited, extraordinary remedy-"a writ of mandamus to compel the appellees to place his name on the ballot as a candidate for a particular office in a particular election." Id. at 43, 90 S.Ct. at 208. The Court noted that the plaintiff did not allege that he intended to run for office in future elections, attempt to maintain a class action, sue on behalf of himself and independent voters, or seek a declaratory judgment. Id. at 43, 90 S.Ct. at 207-08. The Court's recognition of the first three factors suggests that the Court considered whether the same plaintiff would be subjected to the same action again in this pre- Storer election law case.[4]
*1303 V.
Although it is clear that the Supreme Court has not dispensed with the same complaining party rule, several cases, multiple treatises, and several scholars have suggested that the rule is applied in a rather relaxed manner. See 13C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 3533.9 (3d ed. 2008) ("Wright & Miller") ("Although it has not been abandoned, the requirement that the individual plaintiff is likely to be affected by a future recurrence of a mooted dispute has been diluted in some cases."); 15 Moore's Federal Practice § 101.99 (2018) ("[T]he [capable-of-repetition] exception generally applies only if the claim of the very same litigant will evade review. ... However, this standard has been relaxed in some cases ...."); Evan Tsen Lee, Deconstitutionalizing Justiciability: The Example of Mootness, 105 Harv. L. Rev. 603, 623 (1992) (arguing that mootness should be considered a prudential doctrine); Marc Rohr, Fighting for the Rights of Others: The Troubled Law of Thirdparty Standing and Mootness in the Federal Courts, 35 U. Miami L. Rev. 393, 444 (1981) (recognizing that the Supreme Court has applied the same complaining party rule with "leniency" in election cases).
One treatise states, "The requirement that the plaintiff show a prospect of personal future involvement with challenged practices may be relaxed substantially with respect to matters of apparent public interest." Wright & Miller, supra at § 3533.8.3. Another opines that the rule is relaxed in cases "involving elections or ongoing government policies." Moore's Federal Practice, supra at § 101.99. Particularly regarding election cases, "[c]andidates have often been allowed to challenge restrictions on candidacy after completion of the election immediately involved and without any showing of plans to become involved in any future election." Wright & Miller, supra at § 3533.9. Our discussion above of Storer seems to confirm some relaxation. See also Moore, 394 U.S. at 815-16, 89 S.Ct. at 1494 (holding that the independent candidates' challenge to Illinois's ballot access signature requirement was not moot without explicitly addressing the likelihood that the same independent candidates would seek to run again); Brown, 498 U.S. at 473 & n.8, 111 S.Ct. at 885 & n.8 (stating that "[r]espondent has run for office before and may well do so again" but also noting that the respondent was in fact running in another union election).
The Sixth Circuit case Lawrence v. Blackwell, 430 F.3d 368 (6th Cir. 2005), illustrates this relaxed application of the same complaining party rule. Lawrence involved an independent candidate's challenge to Ohio's restrictions on ballot access in the context of a regular general election cycle. Id. at 370. The court held that the case was not moot notwithstanding that the 2004 election at issue had passed. Id. at 371. Applying the same complaining party rule, the court held that the controversy was capable of repetition:
Although Lawrence has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so. Neither is an explicit statement from Shilo necessary in order to reasonably expect that in a future election she will wish to vote for an independent candidate who did not decide to run until after the early filing deadline passed. The law at issue is still valid and applicable to both Lawrence and any independent candidate Shilo might wish to vote for in future election years. Therefore, the controversy is capable of repetition.
*1304 Id. Thus, the Sixth Circuit has held that there is no requirement for affirmative proof that the same complaining party intends to continue similar participation in politics and again challenge the restriction at issue; it is sufficient that there be a reasonable expectation under the circumstances that he will again be subjected to the challenged restriction.[5]
Other courts have interpreted the same complaining party rule in a similarly relaxed manner. See Merle v. United States, 351 F.3d 92, 95 (3d Cir. 2003) (holding that a postal worker's challenge to a provision of the Hatch Act that barred him from running for Congress was not moot even though the election had passed because it was reasonable to expect the plaintiff to wish to run for office again regardless of whether he explicitly stated his intent to do so but also interpreting the plaintiff's statement that he would be subject to the Hatch Act in future elections as an indication that the plaintiff intended to run for office again); Majors v. Abell, 317 F.3d 719, 723 (7th Cir. 2003) (holding that the plaintiff's challenge to a state law regarding political advertising was capable of repetition even though the named plaintiff had not sought to run as a candidate in the next election, stating, "[I]n an election case the court will not keep interrogating the plaintiff to assess the likely trajectory of his political career."); Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 37 n.12 (1st Cir. 1993) (finding a reasonable expectation that the plaintiff "w[ould] encounter the same barrier again" where "she ha[d] not renounced possible future candidacies," and noting that "politicians, as a rule, are not easily discouraged in the pursuit of high elective office"); see also Kucinich v. Tex. Democratic Party, 563 F.3d 161, 165 (5th Cir. 2009) (holding that a challenge to a Texas Democratic Party oath requirement was not moot even though the plaintiff's counsel "could not state whether his client ha[d] an intention to run for President in the future and declined to express a belief that [the plaintiff] w[ould] again be subject to the party's oath requirement"); Schaefer v. Townsend, 215 F.3d 1031, 1033 (9th Cir. 2000) (relying on Dunn and holding that the plaintiff's challenge to a residency requirement was not moot even though the candidate refused to disclose whether he intended to run in future elections); McLain v.Meier, 637 F.2d 1159, 1162 n.5 (8th Cir. 1980) (holding that the plaintiff's challenge to state ballot access and formatting statutes was not moot without requiring proof that the plaintiff intended to seek ballot access in future elections).[6]
*1305 We need not definitively decide in this case the outer boundaries of the relaxation with respect to the application of the same complaining party rule. We are confident that the instant case does not satisfy the same complaining party rule, however relaxed the rule may be. In light of the history of the infrequent occurrences of special elections in Alabama for U.S. House seats, we conclude that it is highly unlikely that Hall will have an opportunity during his life to seek to run or vote in a special election for a U.S. House seat in Alabama.[7] As noted above, it is highly unlikely that there will be another special election in Hall's own First U.S. House District during his life. And we consider the prospect of Hall's running to represent a district in which he does not reside a mere theoretical possibility. Even if Hall were willing to move to another district upon the announcement of a mid-term U.S. House vacancy-and there is no suggestion that he is-the unpredictable nature of a mid-term U.S. House vacancy would mean that Hall's move to the new district would be shortly before the election. Thus, Hall would probably be considered a carpetbagger if he attempted to run in the special election, further reducing the likelihood of his doing so.[8] Similarly unlikely is the prospect of Hall uprooting his life and quickly moving to a new U.S. House district in order to register and vote in a special election in that district. We therefore conclude that this case is not capable of repetition with regards to Hall under any reasonable application of the same complaining party rule.[9]
*1306 We recognize that this case presents a conflict between strong and legitimate concerns. On the one hand, the district court's opinion seems to us to be a resolution of only the rights of future independent candidates seeking ballot access in future special elections. We can perceive of no real interest on the part of Hall because there is no remedy available to him other than the satisfaction of having this Court tell him that he should have been allowed access to the ballot. See Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, 868 F.3d 1248, 1268 (11th Cir. 2017) (en banc) (recognizing that "absent an accompanying practical effect on the legal rights or responsibilities of the parties before us, we are without jurisdiction to give" litigants "purely psychic satisfaction" through "judicial validation"), cert. denied sub nom., --- U.S. ----, 138 S.Ct. 1326, 200 L.Ed.2d 513 (2018). Any opinion by us on the merits of this case would be nothing more than an advisory opinion. Wholly aside from our constitutional constraint to entertain only real cases or controversies, advisory opinions are always unwise. It is hard for a party to devote the appropriate effort to prosecute a case that can make no real difference to the party; the parties' advocacy necessarily suffers, and the Court is left without necessary guidance.[10]
On the other hand, courts are understandably loathe to permit a situation in which a governmental restriction is effectively immune from judicial review and correction, because the duration of the restriction is too short to be fully litigated before it expires. Fortunately, the instant case does not present a situation in which a challenge to the Alabama restriction will always evade review. Although "the 'mere presence of ... allegations' that might ... benefit other similarly situated individuals cannot 'save [a litigant's] suit from mootness once [his] individual claims' have dissipated," Sanchez-Gomez, 138 S.Ct. at 1540 (quoting Genesis Healthcare Corp., 569 U.S. at 73, 133 S.Ct. at 1529 ), a litigant whose interest extends beyond his or her own concern about access to the ballot for a particular special election can file a class action suit that comports with the strictures of Federal Rule of Civil Procedure 23, and thus avoid mootness. Id. at 1538-39. The Supreme Court in Sosna has held that, when a suit is brought as a class action and the district court has certified the class and found that the named plaintiff would fairly and adequately protect the interests of the class, "[t]he controversy may exist ... between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot" and is not capable of repetition with regards to the named plaintiff. 419 U.S. at 402, 95 S.Ct. at 559. We believe that such a posture is much preferable, as compared to the advisory opinion that Hall seeks, because the class certification findings provide assurance that the class of future candidates and/or future voters would be adequately represented by vigorous advocacy.[11] See also *1307 Sanchez-Gomez, 138 S.Ct. at 1539 ("[C]ourts may not 'recognize ... a common-law kind of class action' or 'create de facto class actions at will.' " (quoting Taylor v. Sturgell, 553 U.S. 880, 901, 128 S.Ct. 2161, 2176, 171 L.Ed. 2d 155 (2008) ) ).
For the foregoing reasons, we conclude that this case is MOOT. Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss the case as MOOT.
VACATED and REMANDED with instructions.

Plaintiff-below N.C. "Clint" Moser, Jr. also brought First and Fourteenth Amendment claims in the district court. The district court dismissed Moser's claims as moot, and Moser did not appeal. Plaintiffs also initially brought Equal Protection Clause and Fifteenth Amendment claims. The district court granted summary judgment in favor of the Secretary on Plaintiffs' Equal Protection Clause claims and found that Plaintiffs waived their Fifteenth Amendment claims. Neither Hall nor Moser appealed those decisions.

For the reasons discussed below, we reject Hall's argument that the Supreme Court has dispensed with the requirement that the same complaining party will be subject to the same action again.

Alabama has held special elections for U.S. House seats in 1941, 1944, 1947, 1972, 1989, and 2013. Based on the fact that Alabama has held six special elections for U.S. House seats since 1941, the dissent suggests that special elections for U.S. House seats in Alabama have historically occurred approximately every twelve years. Since 1947, however, special elections for U.S. House seats in Alabama have occurred with intervals over twenty years. In any event, the frequency of special elections in Alabama House seats is such that it will likely be a long time before the next one.

The final two pre-Storer election law cases on which Hall relies also fail to support his argument that the Supreme Court has dispensed with the same complaining party rule in the election context. These cases, Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed. 2d 274 (1972) and Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed. 2d 1 (1973), were class actions. Dunn, 405 U.S. at 331, 92 S.Ct. at 997 ("The issue arises in a class action for declaratory and injunctive relief brought by appellee James Blumstein."); Rosario, 410 U.S. at 755 n.4, 93 S.Ct. at 1248 n.4 ("The present consolidated case originated in two complaints, one by the petitioner Rosario and other named plaintiffs, on behalf of a class, and one by the petitioner Eisner."). As noted above, in Sosna, the Supreme Court made clear that the class action context is different than the situation in which an individual plaintiff's claim is moot and not capable of repetition with regards to the individual plaintiff. Relying on Dunn and Rosario, the Sosna Court held that the plaintiff's class action challenge to Iowa's durational residency requirement to obtain a divorce was not moot even though the named plaintiff had satisfied the requirement, obtained a divorce, and was therefore unlikely to be subjected to the same action again. 419 U.S. at 401-02, 95 S.Ct. at 558-59. The Court observed that the class action issue "was present in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed. 2d 274 (1972), and was there implicitly resolved in favor of the representative of the class." Id. at 400, 95 S.Ct. at 558 ; see also United States v. Sanchez-Gomez, --- U.S. ----, 138 S.Ct. 1532, 1539, 200 L.Ed.2d 792 (2018) ("The 'fact that a putative class acquires an independent legal status once it is certified' was ... 'essential to [the] decision[ ] in Sosna.' " (alteration adopted) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75, 133 S.Ct. 1523, 1530, 185 L.Ed. 2d 636 (2013) ) ).

The Sixth Circuit in Lawrence, either in dicta or an alternative holding, also seemed to dispense with the requirement of a reasonable expectation that the same complaining party be subjected to the same restriction again. Id. at 372. To the extent that the Sixth Circuit so held, we respectfully disagree for the reasons set forth in this opinion. In any event, the Sixth Circuit case is distinguishable from the instant case because it involved a regular election cycle, which would recur frequently.

To the extent that the Fifth Circuit in Kucinich, the Ninth Circuit in Schaefer, or the Eighth Circuit in McLain suggests that the same complaining party rule does not apply at all, we respectfully disagree, as discussed above. Cf. Kucinich, 563 F.3d at 164-65 (observing Justice Scalia's argument "that the Court's treatment of election law cases differs from its traditional mootness jurisprudence by dispensing with the same-party requirement" (citing Honig, 484 U.S. at 335-36, 108 S.Ct. at 611 (Scalia, J., dissenting) ); Schaefer, 215 F.3d at 1033 & n.1 (finding that the plaintiff's challenge to the residency requirement was not moot even though the plaintiff had satisfied the requirement and the election had already been held); McLain, 637 F.2d at 1162 n.5 ("Regardless of [the plaintiff]'s candidacy in any future election, election law controversies tend not to become moot.") ). Moreover, like the Sixth Circuit Lawrence case, Kucinich and McLain involved challenges to election laws as applied during regular election cycles. And although Schaefer involved a special election, the opinion suggests that the challenged residency requirement would apply with equal or greater force during regular election cycles. 215 F.3d at 1034 n.2. Thus, the issues presented in those cases would likely recur frequently, making those cases materially different than the instant case.

By focusing so intensely on Hall's asserted intent to run in future special elections for U.S. House seats in Alabama, the dissent ignores a critical issue in this case-i.e., whether Hall will have an opportunity to run in such an election. Regardless of Hall's intent, if Hall is not likely to have the opportunity to run in a future special election for a U.S. House seat in Alabama, there can be no reasonable expectation that he will do so.
We recognize that courts "do not always require affirmative proof that the same complaining party intends to continue similar participation in political activities" in order to find that the same complaining party rule is satisfied. See supra Part IV. However, the law is well established that courts do require that there be "a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein, 423 U.S. at 149, 96 S.Ct. at 349. For all of the reasons discussed in this opinion, we cannot conclude that there is such a reasonable expectation in this case.

The dissent's focus on our carpetbagger comment is misplaced. The fact that Hall would be unlikely to prevail if running in a foreign House district is just one more factor indicating that there is no reasonable likelihood of such a race.

The dissent mistakenly suggests that we make a factual finding that Hall does not really intend to run in future special elections for U.S. House seats in Alabama. To the contrary, we hold only, as established law provides, that there must be a "reasonable expectation" that he will run again and be subjected to the same or similar restrictions. Under the circumstances presented here, we cannot conclude that Hall's intent is reasonable. Running in a special election for a U.S. House seat outside of Hall's district would require Hall to either abruptly move or regularly travel to another part of Alabama to campaign. Such practical difficulties along with the fact that such an election may not occur for twenty years make the prospect of Hall running in such an election remote regardless of Hall's present intent.
In the dissent's view, the constitutional issue of mootness depends entirely on a plaintiff's mere assertion of intent to run regardless of how unreasonable that may be. In our judgment, the constitutional authority of a court to decide a case could not depend on so slender a read, one so readily subject to manipulation.

To the extent that the dissent suggests that a plaintiff's past candidacy alone is sufficient - i.e., sufficient to satisfy the requirement that there be a reasonable expectation that the plaintiff will run again and be subjected to the same or similar restrictions - even if it is extremely unlikely that the plaintiff will have the opportunity to run and be subjected to the same or similar restrictions, the dissent is in effect dispensing with any requirement that the same complaining party will be subject to the same action again. In Part IV of our opinion, we consider and reject this proposition. We believe that our position-rather than the dissent's position-is more in harmony with the cases in the Supreme Court and the other circuits.

The dissent expresses concern that a class action challenging Alabama's ballot access restrictions during a special election would also be moot and not capable of repetition with regards to any member of the class once the election at issue had passed. We disagree. Such a class action could likely include independent candidates and voters in all U.S. House districts in Alabama. There is a greater likelihood of a future special election when all U.S. House seats are in play; thus, the class would have a much stronger argument than Hall that the issue was capable of repetition with regards to at least some members of the class.