Rel: January 17, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0021

_____

**John Plunk, in his official capacity as Chairman of the Alabama Ethics Commission, et al.**

**v.**

**Irva E. Reed**

**Appeal from Montgomery Circuit Court**
**(CV-24-900057)**

MITCHELL, Justice.

Irva E. Reed seeks to appear on the ballot for an election that has already taken place. Because Reed's claim is moot, and because no cited exception to mootness applies, we must dismiss this appeal.

## Facts and Procedural History

Reed sought to run for a seat on the Montgomery County Commission in 2024. As required to appear on the primary ballot, she submitted her qualifying papers to the Montgomery County Democratic Party ("the Party") in November 2023. At that time, Reed confirmed that she would submit a "Statement of Economic Interests" ("SEI") to the Alabama Ethics Commission ("the Commission") within five days as mandated by § 36-25-15(a), Ala. Code 1975. But she failed to do so, waiting to file her SEI until 41 days after submitting her qualifying papers.

On the same day that Reed filed the tardy SEI, Thomas Albritton, the Director of the Commission, informed the Party that Reed was not qualified to appear on the ballot. Reed then asked the Commission to grant her a five-day extension to file her SEI and to qualify her as a candidate. In support of this request, she provided the Commission with an affidavit stating that an illness had prevented her from timely filing her SEI. Nevertheless, the Commission denied her request for a deadline extension in early January 2024.

Reed then sued Albritton; John Plunk, the Chairman of the Commission; and Wes Allen, the Secretary of State ("the defendants"), in their official capacities, in the Montgomery Circuit Court, seeking a judgment declaring that her illness had prevented her from timely filing the SEI and an injunction that would place her name on the ballot.

The trial court granted Reed's request for a preliminary injunction, ordering the Commission and the Party to certify Reed as a candidate. Had that ruling been enforced, it would have required reprinting the ballots with Reed's name. At that point, however, the defendants appealed the trial court's order, and we stayed the injunction while we addressed the appeal.

Standard of Review

The facts underlying the preliminary injunction are undisputed, and the only issues are legal questions. In this circumstance, our Court reviews the entry of a preliminary injunction de novo. Ex parte Folsom, 42 So. 3d 732, 737 (Ala. 2009).

Analysis

Reed seeks to appear on the primary ballot in an election that has already occurred. But a judgment in Reed's favor at this point would not

"'affect the rights of the parties.'" See Chapman v. Gooden, 974 So. 2d 972, 983-84 (Ala. 2007) (citation omitted) (explaining that, even if an action arose from a justiciable controversy, it cannot be maintained on appeal if the questions raised have been mooted by later events). As a result, her claim is moot.

Our election-law precedents bolster this conclusion. For example, in Ex parte Connors, 855 So. 2d 486, 488 (Ala. 2003), this Court held that "the question whether [a challenged candidate's] name should have appeared on the ballots has been mooted by the election results." (Emphasis omitted). Similarly, in Bell v. Eagerton, 908 So. 2d 204 (Ala. 2002), we held that a plaintiff's post-election challenge to his disqualification as a candidate was moot. In those cases, as here, rendering judgment would have been "purely academic." Connors, 855 So. 2d at 489.

Even so, Reed argues that three exceptions to our mootness doctrine preserve her claim: (a) capable of repetition but evading review; (b) public interest; and (c) collateral rights. As discussed below, none of these exceptions apply.

4

A. Capable of Repetition But Evading Review

Reed first argues that the capable-of-repetition-but-evading-review exception saves her claim. This exception applies when there is a "significant issue that cannot be addressed by a reviewing court because of some intervening factual circumstance, most often that the issue will be resolved by the passage of a relatively brief period of time." McCoo v. State, 921 So. 2d 450, 458 (Ala. 2005). We have often applied this exception to election-law challenges "because the interpretation [at issue] could impact future elections." Griggs v. Bennett, 710 So. 2d 411, 412 n.4 (Ala. 1998).

But Reed has the burden of demonstrating that this exception applies, and she fails to meet that burden. See Gaines v. Smith, 379 So. 3d 411, 418 (Ala. 2022) (plurality opinion) (affirming dismissal of plaintiff's claims as moot because the appellant failed to "meet his burden of establishing that his claims … meet the [capable-of-repetition-but-evading-review] exception to mootness"). Reed does little to demonstrate that the defendants' discrete application of § 36-25-15(a) is a significant issue as required under McCoo. See 921 So. 2d at 458. She has made no argument that the challenged interpretation of the statute is as

significant as necessary for the exception to apply. See id. at 459. Instead, Reed relies merely on conclusory assertions that the defendants will "misapply" the statute again. As a result, Reed has failed to meet her burden, and the capable-of-repetition-but-evading-review exception does not apply.

### B. Public Interest

Reed next argues that the public-interest exception should preserve her claim. The criteria for applying this exception are "(1) 'the public nature of the question,' (2) 'the desirability of an authoritative determination for the purpose of guiding public officers,' and (3) 'the likelihood that the question will generally recur.'" Barber v. Cornerstone Cmty. Outreach, Inc., 42 So. 3d 65, 75 (Ala. 2009) (quoting Chapman, 974 So. 2d at 989) (other citations omitted). We construe this exception narrowly. Mills v. City of Opelika, 320 So. 3d 554, 562 (Ala. 2020) (citing Chapman, 974 So. 2d at 989).

Reed does not clear even the first hurdle for establishing this exception. Demonstrating the "public nature" of a question requires presenting a "pressing issue of great public concern across Alabama." Mills, 320 So. 3d at 563. For example, we have held that the legality of

6

gambling, which has been "hotly debated … throughout the State for a number of years," fits the exception. Id. at 564. By contrast, issues like "the legality of automated traffic-enforcement cameras," which do not generate broad public controversy, fail to do so. Id.

Reed has failed to show here that the interpretation of § 36-25-15(a) is a question of a "public nature." See Mills, 320 So. 3d at 564. She has not demonstrated that there is a great public debate over this statute or that its application presents a "pressing issue of great public concern." Id. And she has not demonstrated that this is an issue that excites passion and consumes the "whole public." See Mills, 320 So. 3d at 563-64. Consequently, the public-interest exception does not save her claim.

C. Collateral Rights

Finally, Reed argues that the collateral-rights exception preserves her claim. This exception allows courts to hear an otherwise moot appeal when, "if no decision … is made …, collateral rights of the parties dependent upon its decision will be left undetermined." Grant v. City of Mobile, 50 Ala. App. 684, 688, 282 So. 2d 285, 288 (Civ. App. 1973). Reed argues that questions related to § 36-25-15(a), such as when an SEI is

due and to whom, are sufficient to meet the requirements of this exception.

But the "collateral rights" that Reed cites are not collateral at all. Questions of when and how to submit an SEI are core to Reed's claim, not collateral. Indeed, her requested relief depends on how this Court decides those questions. Calling these "collateral rights" does not make them so. And Reed does not cite any other rights that could plausibly be considered collateral to her argument.

We rejected a similar attempt to shoehorn primary rights into the collateral-rights exception in <u>Bell</u>, 908 So. 2d at 205. There, we held that an appeal was moot even though the appellant had argued that his constitutional rights -- the same rights underpinning his initial complaint -- were "collateral rights" demanding a ruling. <u>Id.</u> at 205-07. To the contrary, those "collateral rights" were the primary rights at issue. Because Reed similarly argues that her core rights under § 36-25-15(a) are collateral here, the collateral-rights exception does not apply and does not preserve her claim.

## Conclusion

Reed's claim is moot. And although Reed cites several exceptions to mootness, none of them apply. As a result, we dismiss this appeal with instructions to the trial court to dissolve the injunction and dismiss Reed's complaint.

APPEAL DISMISSED.

Parker, C.J., and Shaw, Wise, Bryan, Mendheim, Stewart, and Cook, JJ., concur.

Mitchell, J., concurs specially, with opinion.

Sellers, J, concurs in the result.

MITCHELL, Justice (concurring specially).

I concur fully with the majority opinion. But I write separately because I believe we should narrow our Court's standard for applying the capable-of-repetition-but-evading-review exception. In particular, I believe we should apply the exception only when there is a demonstrable likelihood that the challenged action will injure the plaintiff again. Narrowing the exception in this way would align our mootness doctrine with the original meaning of the judicial power, the separation-of-powers structure of our State Constitution, see Ala. Const. 2022, art. III, § 42, and art. VI, § 139, and our precedent, see, e.g., State ex rel. Eagerton v. Corwin, 359 So. 2d 767, 769 (Ala. 1977).

As the majority opinion discusses, the capable-of-repetition-but-evading-review exception currently applies when there is a "significant issue that cannot be addressed by a reviewing court because of some intervening factual circumstance, most often that the issue will be resolved by the passage of a relatively brief period of time." McCoo v. State, 921 So. 2d 450, 458 (Ala. 2005). And, as the majority opinion also notes, we have often applied this exception to election-law challenges

10

"because the interpretation [at issue] could impact future elections." Griggs v. Bennett, 710 So. 2d 411, 412 n.4 (Ala. 1998).

But our expansive application of the exception to election-law challenges is based on a misguided and out-of-date federal rule that the United States Supreme Court first announced in Moore v. Ogilvie, 394 U.S. 814, 816 (1969). In Moore, the Court applied the capable-of-repetition-but-evading-review exception to a post-election challenge, reasoning that the challenged action would affect the general voting populace in the future. 394 U.S. at 816. Several years later, this Court adopted the Moore formulation in State ex rel. Kernells v. Ezell, 291 Ala. 440, 444, 282 So. 2d 266, 270 (1973).

After Kernells, however, the United States Supreme Court corrected itself by narrowing the exception at the federal level. In Weinstein v. Bradford, 423 U.S. 147 (1975), the Court clarified that the exception applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." 423 U.S. at 149 (emphasis added). The Court based this narrower exception on the "historical developments

11

of the mootness doctrine," recognizing that this approach better conforms to traditional mootness principles. <u>Weinstein</u>, 423 U.S. at 148. Even so, <u>Moore</u> continued to limp along, and our Court continued to apply it. But recently, the United States Supreme Court confirmed that it will apply <u>Weinstein</u>'s narrow exception going forward. <u>United States v. Sanchez-Gomez</u>, 584 U.S. 381, 391 (2018); <u>see also</u> <u>Shemwell v. City of McKinney</u>, 63 F.4th 480, 484 (5th Cir. 2023); <u>Kircher v. City of Ypsilanti</u>, 809 F. App'x 284, 296 (6th Cir. 2020); <u>Hall v. Secretary, State of Alabama</u>, 902 F.3d 1294, 1297 (11th Cir. 2018).

While we are under no obligation to interpret the Alabama Constitution in a way that mirrors the federal Constitution, it is clear to me that <u>Weinstein</u>'s narrower formulation better reflects our State's legal tradition. For one thing, the <u>Weinstein</u> formulation reflects the limits on the judicial power. <u>See</u> 3 William Blackstone, <u>Commentaries on the Laws of England</u> *25. In his seminal legal treatise, William Blackstone wrote that the judicial power is the power "to examine the truth of the fact …, and, if any injury appears to have been done, to ascertain and by its officers to <u>apply the remedy</u>." <u>Id.</u> (emphasis added). In doing so, Blackstone reasoned that remedying an invaded legal right, complained

12

of by the injured party, is essential to the act of judging. Id. Thus, when a court can no longer remedy a plaintiff's injury, the judicial power no longer extends.

The United States Supreme Court's jurisprudence reflects this understanding of the judiciary's role. In 1895, the Court wrote that "[t]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect." Mills v. Green, 159 U.S. 651, 653 (1895) (emphasis added). The Court added that "when, pending an appeal …, an event occurs which renders it impossible for this court … to grant [the plaintiff] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." Id. This idea does not flow from the specific language of Article III of the United States Constitution. Instead, it comes from the very nature of the judicial power -- the same power that this Court wields under the Alabama Constitution. See Ala. Const. 2022, art. VI, § 139.

The history of equity confirms that, to wield the judicial power, a court must be able to meaningfully redress a plaintiff's injury. For centuries, instituting a suit in equity has required a "prayer for relief." Charles Barton, History of a Suit in Equity: From Its Commencement to

Its Final Termination, 47 (Robert Clarke & Co., 1877). That relief may be either "special," the relief that the plaintiff believes is necessary to rectify his injury, or "general," the relief that the court believes the case "requires." Id. And it implies that the relief must be of a kind that would resolve the complained-of injury. Indeed, the very purpose of equitable remedies is to provide relief when legal remedies cannot. See Samuel L. Bray & Paul B. Miller, Getting Into Equity, 97 Notre Dame L. Rev. 1763, 1792 (2022). That is why suits in equity require that "[p]etitioners pray[] for a just, fair, or equitable remedial resolution of a specific problem." Id. (emphasis added). Our Court's power, then, does not extend to providing equitable relief when doing so would not resolve the plaintiff's complaint.

Another reason to adopt the narrower exception is because it better conforms to the separation-of-powers structure of our State Constitution. See Ala. Const. 2022, art. III, § 42. When there is no live controversy, a decision is little more than an advisory opinion. See Hall v. Beals, 396 U.S. 45, 48 (1969) (noting that a "live controversy … must exist if [a court is] to avoid advisory opinions on abstract propositions of law"). And when we issue an advisory opinion, our Court "impos[es] its methods or substitut[es] its judgment" for that of the Legislature's, thereby

14

infringing on the Legislature's plenary powers. <u>Finch v. State</u>, 271 Ala. 499, 504, 124 So. 2d 825, 830 (1960); <u>see also</u> <u>Sheppard v. Dowling</u>, 127 Ala. 1, 6, 28 So. 791, 793 (1900). Therefore, our Court erodes the separation of powers when we decide a case that is no longer live and in which we cannot remedy the plaintiff's injury.

Finally, the narrower exception better accords with our precedents in which we have held that a case is moot when there is no longer a "justiciable controversy." <u>See</u> <u>Corwin</u>, 359 So. 2d at 769. Previously, we have held that a justiciable controversy is one that is "'definite and concrete, touching the legal relations of the parties in adverse legal interest, and … admitting of specific relief through a [judgment].'" <u>MacKenzie v. First Alabama Bank</u>, 598 So. 2d 1367, 1370 (Ala. 1992) (quoting <u>Copeland v. Jefferson Cnty.</u>, 284 Ala. 558, 561, 226 So. 2d 385, 387 (1969)). But the broad exception that we have applied since <u>Kernells</u> has permitted our Court to grant relief that does not bear "concrete[ly]" on the relations between the plaintiff and the defendant and that does not "specific[ally]" relieve the plaintiff's complained-of injury. <u>Id.</u> Narrowing the exception, therefore, would bring harmony to our mootness doctrine.

In light of the above, I believe we should narrow the capable-of-repetition-but-evading-review exception and apply it only when there is a demonstrable likelihood of <u>the plaintiff</u> suffering the complained-of injury again. In an appropriate future case, in which our current capable-of-repetition-but-evading-review exception properly applies, I would welcome briefing asking us to do so.