# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PAQUIN v CITY OF ST IGNACE

Docket No. 156823. Argued on application for leave to appeal April 10, 2019. Decided July 8, 2019.

Fred Paquin brought a declaratory action in the Mackinac Circuit Court, seeking a ruling that his position in tribal government did not constitute employment in "local, state, or federal government" under Const 1963, art 11, § 8. Plaintiff served the Sault Ste. Marie Tribe of Chippewa Indians (the Tribe), a federally recognized Indian tribe, in two capacities: as the chief of police for the tribal police department and as an elected member of the board of directors, the governing body of the Tribe. In 2010, plaintiff pleaded guilty to a single count of conspiracy to defraud the United States by dishonest means in violation of 18 USC 371, for which he was sentenced to a year and a day in prison. The underlying conduct involved the misuse of federal funds granted to the tribal police department. In both 2013 and 2015, plaintiff sought to run for a position on the city council of defendant, the city of St. Ignace, in the November general election. Plaintiff was rebuffed each time by defendant's city manager, who denied plaintiff's request to be placed on the ballot. In each instance, defendant's city manager relied on Const 1963, art 11, § 8 to conclude that plaintiff's prior felony conviction barred him from running for city council. Plaintiff brought the declaratory action and moved for summary disposition. The Attorney General moved to submit an amicus brief and to participate in oral argument in support of defendant, which the court granted. Following oral argument, the court, William W. Carmody, J., denied plaintiff's motion for summary disposition and dismissed his complaint with prejudice. Plaintiff appealed, and the Court of Appeals, K. F. KELLY, P.J., and BECKERING and RIORDAN, JJ., affirmed, holding that the Tribe qualified as a "local government" under the plain meaning of Const 1963, art 11, § 8. 321 Mich App 673 (2017). Plaintiff sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 1076 (2018).

In an opinion by Justice BERNSTEIN, joined by Chief Justice MCCORMACK and Justices ZAHRA, VIVIANO, CLEMENT, and CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Article 11, § 8 of the 1963 Michigan Constitution provides, in pertinent part, that a person is ineligible for election or appointment to any state or local elective office of this state if, within the immediately preceding 20 years, the person was convicted of a felony involving dishonesty, deceit, fraud, or a breach of the public trust and the conviction was related to the

person's official capacity while the person was holding any elective office or position of employment in local, state, or federal government. In this case, the narrow issue was whether the tribal government qualified as "local, state, or federal government" under Const 1963, art 11, § 8. An Indian tribe does not constitute "federal government" because, when read in context, the term "federal government" as used in Const 1963, art 11, § 8 specifically refers to the United States federal government. The constitutional provision does not use a modifier preceding the term "federal government," and coupled with the understanding that "federal government" refers to a particular form of government, the term "federal government" as used in Const 1963, art 11, § 8 refers to the United States federal government. And because "federal government" refers to the United States federal government specifically, neither "state government" nor "local government" has a broader application. Whatever local governmental functions a tribal government might fulfill, a tribal government is different in kind from a city's local government, which does not have inherent sovereign authority. Additionally, the mere existence of the unique relationship between the United States federal government and tribal governments highlights the difference between tribal governments and local subunits of state government: tribal governments are domestic dependent nations that exercise inherent sovereign authority over their members and territories and therefore cannot be characterized as either entirely domestic or entirely sovereign. Accordingly, the tribal government of a federally recognized Indian tribe does not constitute "local government" as that term is used in Const 1963, art 11, § 8.

Court of Appeals judgment reversed; circuit court order denying plaintiff's motion for summary disposition vacated; case remanded to the Mackinac Circuit Court.

Justice MARKMAN, dissenting, would have held that this case was rendered moot by the November 2015 election and that the "likely to recur yet evade review" element of the mootness doctrine was inapplicable because the underlying dispute in this case was not predestined to evade judicial review. Therefore, Justice MARKMAN would not have addressed the substantive merits of the case. In this case, once the November 2015 election for city council occurred, plaintiff could no longer maintain a candidacy for a position on the city council in 2015. Consequently, the only question was whether a fraud-related conviction sustained while serving in tribal government triggered the prohibitions of Const 1963, art 11, § 8, and this was precisely the type of abstract and academic question of law that is the hallmark of a moot case. Furthermore, the "likely to recur yet evade review" element of the mootness doctrine was inapplicable. A court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case unless the issue is one of public significance that is likely to recur yet evade judicial review. Under Michigan law concerning the "likely to recur yet evade review" element of the mootness doctrine, it is unclear whether the issue must be likely to recur as to the particular party involved in the case; however, under federal law, a case is not moot if the issue is capable of repetition yet evading review and the issue generally must be capable of repetition as to the same complaining party. Accordingly, federal caselaw was instructive. Applying this federal framework, the dispositive inquiry was whether the challenged action was in its duration too short to be fully litigated prior to cessation or expiration. In this case, the challenged action was defendant's decision concerning ballot access and the relevant time frame for evading review was two years or slightly less, given the time required to prepare the ballots. Two years was more than sufficient time for plaintiff to have obtained judicial review of his case and would be more than sufficient time for a future litigant to obtain judicial review of his or her case. Had plaintiff not waited until a few months before the November 2015

election to bring his declaratory-judgment action and instead promptly sought relief from the trial court at an earlier juncture, and perhaps sought expedited consideration of his claim pursuant to MCR 2.605(D), MCR 7.211(C)(6), and MCR 7.311(E), he could have secured judicial review of his case; thus, plaintiff's declaratory-judgment claim was not predestined to evade judicial review. The question here was not one of prudence or propriety, but rather one of threshold constitutional authority.

©2019 State of Michigan

# OPINION

Chief Justice:
  Bridget M. McCormack

Chief Justice Pro Tem:
  David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED July 8, 2019

STATE OF MICHIGAN

SUPREME COURT

FRED PAQUIN,

      Plaintiff-Appellant,

v                                      No. 156823

CITY OF ST. IGNACE,

      Defendant-Appellee,
and

ATTORNEY GENERAL,

      Intervening Appellee.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

This case requires us to examine the language of our state Constitution; specifically, we are concerned with whether a tribal government constitutes "local . . . government" under Const 1963, art 11, § 8. We hold that it does not. Accordingly, we reverse the

judgment of the Court of Appeals and remand to the circuit court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Fred Paquin served the Sault Ste. Marie Tribe of Chippewa Indians (the Tribe), a federally recognized Indian tribe whose territory is located within the geographic boundaries of Michigan, in two capacities: as the chief of police for the tribal police department and as an elected member of the board of directors, the governing body of the Tribe. In 2010, plaintiff pleaded guilty to a single count of conspiracy to defraud the United States by dishonest means in violation of 18 USC 371, for which he was sentenced to a year and a day in prison. The underlying conduct involved the misuse of federal funds granted to the tribal police department.

In both 2013 and 2015, plaintiff sought to run for a position on defendant's city council in the November general election. Plaintiff was rebuffed each time by defendant's city manager, who denied plaintiff's request to be placed on the ballot. In each instance, defendant's city manager relied on Const 1963, art 11, § 8 to conclude that plaintiff's prior felony conviction barred him from running for city council. Of particular note is the fact that defendant's city manager specifically relied on a formal Attorney General opinion that had concluded that this constitutional provision "applies to a person convicted of a crime based on that person's conduct as a governmental employee or elected official of a federally recognized Indian Tribe." OAG, 2013-2014, No. 7273, p 30, at 30 (August 15, 2013).[1]

_____

[1] Although the Attorney General opinion does not mention plaintiff by name, the Attorney General wrote the opinion at the request of State Representative Frank Foster, who at the time represented the district that includes St. Ignace. The Attorney General opinion was

Following the denial of his second request, plaintiff filed a declaratory action on July 20, 2015, seeking a ruling that the constitutional provision did not apply to him because his positions had been in tribal government, not "local, state, or federal government" under Const 1963, art 11, § 8. Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10). The Attorney General moved to submit an amicus brief and to participate in oral argument in support of defendant, which the circuit court granted. After oral argument, the circuit court denied plaintiff's motion for summary disposition and dismissed his complaint with prejudice.

On October 19, 2017, the Court of Appeals affirmed in a published per curiam opinion. *Paquin v City of St Ignace*, 321 Mich App 673; 909 NW2d 884 (2017). The Court of Appeals noted that the only issue before it was whether plaintiff's position of employment in tribal government constituted employment in "local, state, or federal government" under Const 1963, art 11, § 8.[2] *Id*. at 681. Specifically, the Court of Appeals held that "the Tribe qualifies as a 'local government' under the plain meaning of the text of Const 1963, art 11, § 8." *Id*.

Plaintiff timely sought leave to appeal in this Court. On May 23, 2018, we ordered oral argument on the application. *Paquin v City of St Ignace*, 501 Mich 1076 (2018).

---

dated August 15, 2013, and defendant's city manager first rejected plaintiff's request to be put on the ballot on August 16, 2013.

[2] Although plaintiff had made an argument regarding the self-executing nature of the constitutional provision in his complaint for declaratory relief, no such argument was presented on appeal, and the Court of Appeals held that the argument was waived. *Paquin*, 321 Mich App at 680 n 3. We similarly hold that the argument was abandoned on appeal and accordingly decline to address this issue.

3

## II. STANDARD OF REVIEW

The interpretation of a constitutional provision is a question of law, which we review de novo. *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014). "[T]he primary objective of constitutional interpretation is to realize the intent of the people by whom and for whom the constitution was ratified." *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 652; 698 NW2d 350 (2005) (quotation marks and citation omitted). Accordingly, "we seek the common understanding of the people at the time the constitution was ratified. This involves applying the plain meaning of each term used at the time of ratification, unless technical, legal terms are used." *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 558-559; 737 NW2d 476 (2007) (quotation marks and citations omitted).[3]

---

[3] This Court has described the rule of "common understanding" as follows:

> A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed. [*Traverse City Sch Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting 1 Cooley, Constitutional Limitations (6th ed), p 81 (quotation marks and emphasis omitted).]

4

III. ANALYSIS

Article 11, § 8 was added to the Michigan Constitution by amendment after a statewide vote in the November 2010 general election. In relevant part, the provision states:

> A person is ineligible for election or appointment to any state or local elective office of this state . . . if, within the immediately preceding 20 years, the person was convicted of a felony involving dishonesty, deceit, fraud, or a breach of the public trust and the conviction was related to the person's official capacity while the person was holding any elective office or position of employment in *local, state, or federal government*. This requirement is in addition to any other qualification required under this constitution or by law.

> The legislature shall prescribe by law for the implementation of this section. [Emphasis added.]

The issue before us is narrowly presented.[4] The parties agree that the material facts are not in dispute and that most of the language of Const 1963, art 11, § 8 is satisfied. There is,

---

[4] As an initial matter, we disagree with the dissent's conclusion that we should declare sua sponte that this case is moot. A case is moot if the court's ruling " 'cannot have any practical legal effect upon a then existing controversy.' " *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018), quoting *Anway v Grand Rapids R Co*, 211 Mich 592, 610; 179 NW 350 (1920). Although mootness may be raised sua sponte by the court "[w]here the facts of a case make clear that a litigated issue has become moot," we find that "[t]his is not such a case." *City of Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 255 n 12; 701 NW2d 144 (2005). In *City of Novi,* we described how mootness is raised and analyzed by a court in a typical case:

> When a complaint is filed and an actual injury is alleged, a rebuttable presumption is created that there is a genuine case or controversy. The case may be dismissed as moot if the moving party satisfies the heavy burden required to demonstrate mootness. If such a motion is brought, the plaintiff must further support the allegations of injury with documentation and must sufficiently support its claim if it goes to trial. [*Id*. at 256 (citations and quotation marks omitted).]

5

for example, no dispute that tribal government is *a* government; instead, the question is limited to whether the Tribe qualifies as "local, state, or federal government."

The Court of Appeals and the Attorney General opinions focused exclusively on whether the Tribe constitutes "local government." The Court of Appeals specifically defined "local government," in relevant part, as follows: "*Merriam-Webster's Collegiate Dictionary* (2007), p 730, defines 'local government' as: '1. the government of a specific local area constituting a major political unit (as a nation or a state)[.]' " *Paquin*, 321 Mich App at 682. As an initial matter, we note that this quotation appears to be incomplete, as

---

See also *MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc*, 465 Mich 303, 306-307; 633 NW2d 357 (2001) ("[T]o get an appeal dismissed as moot, thus depriving a party seeking redress of a day in court, the party urging mootness on the court must make a very convincing showing that the opportunity for an appellate court to review the matter should be denied. Not surprisingly, it is rare for a court to grant such a motion."). Like in *City of Novi*, "[t]hese procedural requirements are entirely lacking in this case at this time. No motion or other pleading has claimed mootness and there has been no 'support' so as to meet *any* burden, much less the 'heavy burden' required to demonstrate mootness." *City of Novi*, 473 Mich at 256. Indeed, not only has the issue not been raised by the parties, but the Attorney General specifically disclaimed it at oral argument.

We do not agree with the dissent that the record here is sufficient to proceed with a sua sponte mootness analysis. Under the city's interpretation of Const 1963, art 11, § 8, plaintiff is "ineligible for election or appointment to any state or local elective office of this state and ineligible to hold a position in public employment in this state that is policy-making or that has discretionary authority over public assets" for 20 years following his 2010 felony conviction. In his complaint, plaintiff requested a declaratory judgment that Const 1963, art 11, § 8 does not apply to his former conviction. Thus, contrary to the dissent's assertion, plaintiff's request for relief was not limited to his placement on the ballot for the November 2015 election. And, when questioned about mootness at oral argument, plaintiff's counsel stated that plaintiff intends to seek office in the future, an assertion that is not unfounded in light of the fact that plaintiff attempted to run for office in 2013 and 2015 and has spent the last four years litigating this action at every level of our court system. Under these circumstances, we cannot conclude that this is a case in which the facts make clear that a litigated issue has become moot.

6

the relied-upon dictionary actually defines "local government" as "the government of a specific local area constituting *a subdivision of* a major political unit (as a nation or state)[.]" *Merriam-Webster's Collegiate Dictionary* (2007), p 730 (emphasis added). See also *Black's Law Dictionary* (10th ed), p 811 (defining "local government," in relevant part, as "[t]he government of a particular locality, such as a city, county, or parish; a governing body at a lower level than the state government"). This error significantly undermines the Court of Appeals' textual analysis of Const 1963, art 11, § 8. This omitted language strongly suggests that "local . . . government" be understood as a subdivision of another body of government. Significantly, the erroneous definition would also render into needless surplusage the additional language in the list, which refers to both "state . . . government" and "federal government."

Although it has not been argued that the Tribe constitutes either "state . . . government" or "federal government," parsing those two terms further helps to discern the intent of the people of Michigan. We begin with the term "federal government." We note that the term is commonly used as shorthand for a country's government in general; indeed, under the entry for "federal government," *Black's Law Dictionary* simply directs the reader to consult the definition of "government." *Black's Law Dictionary* (10th ed), p 728.[5] But this reading of "federal government" is overly simplistic. Although our

---

[5] We acknowledge that, under the entry for "government," *Black's Law Dictionary* does include a specific entry for "federal government," which it defines, in relevant part, either as "[a] national government that exercises some degree of control over smaller political units that have surrendered some degree of power in exchange for the right to participate in national political matters" or "[t]he U.S. government." *Black's Law Dictionary* (10th ed), pp 810-811 (emphasis added).

national government is *a* federal government, "federal" government necessarily implies that there is a union, or a federation, of smaller political entities; in contrast, there are many examples of *unitary* governments that do not take the same form.[6] A reading of "federal government" to include only those foreign governments that are structured in the same manner as our federal government would seem to be less than obvious or common.

Instead, it is instructive to note the lack of determiners or articles preceding the list "local, state, or federal government." Although "any" is used to modify the phrase "elective office or position of employment," no such modifier is included before "local, state, or federal government." When read in context, the constitutional provision refers to a person who "was holding any elective office or position of employment in . . . federal government." Const 1963, art 11, § 8. The provision does *not* state "a federal government" or "any federal government," both of which might suggest an intent to include other federal governments. When no modifier is used at all, coupled with our understanding of "federal government" as referring to a particular form of government, it is clear that the common understanding of the phrase is that it specifically refers to the United States federal government.

This understanding of "federal government" necessarily impacts our reading of the terms "state . . . government" and "local . . . government," because these terms must be read in context. See *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 156; 665 NW2d 452 (2003) ("[E]very provision must be interpreted in the light of the document as a whole, and no provision should be construed to nullify or impair another."). If "federal

---

[6] Vatican City State comes to mind.

government" here refers to the United States federal government specifically, it does not follow that either "state . . . government" or "local . . . government" would have broader application.

Nonetheless, that "local government" must here refer to *domestic* local government does not end our inquiry. The Supreme Court of the United States has attempted to describe tribal governments as "domestic dependent nations," *Cherokee Nation v Georgia*, 30 US 1, 17; 8 L Ed 25 (1831), albeit ones that "exercise inherent sovereign authority over their members and territories," *Oklahoma Tax Comm v Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 US 505, 509; 111 S Ct 905; 112 L Ed 2d 1112 (1991). Given the difficulty inherent in characterizing tribal government as either entirely domestic or entirely sovereign, we decline to explore the relationship between tribes and our federal government in further detail.

However, the mere existence of this unique relationship between the United States federal government and tribal governments highlights the difference between tribal governments and local subunits of state government.[7] The Attorney General argues that, because the Tribe *functions* as a local government, the Tribe *is* a local government under Const 1963, art 11, § 8. To agree would be to write language into our Constitution that is

_____

[7] The Attorney General conceded in the circuit court that the Tribe is not a local subunit of state government. The Court of Appeals noted that a local governmental entity need not be a political subdivision of the state of Michigan under Const 1963, art 11, § 8, relying on its incomplete dictionary definition. *Paquin*, 321 Mich App at 684. However, given our understanding that Const 1963, art 11, § 8 refers only to units of domestic government and that states are political subunits of our federal government, it follows that "local government" should also be understood to refer to political subunits of state or federal government.

9

not there and that the people of this state did not choose to include. Nowhere in our Constitution does it state that local-government equivalency suffices; the provision simply states "local . . . government." It is thus irrelevant to note all of the functions that the Tribe provides that are similar to that of, for example, the city of St. Ignace—that the two entities function similarly in some respects does not make them the same.[8]

To the extent that the Court of Appeals relied on language from the Supreme Court of the United States stating that tribes "retain[] their original natural rights in matters of local self-government," this language merely recognizes that tribes retain *the right to self-governance*, not that they are *local governments*. *Santa Clara Pueblo v Martinez*, 436 US 49, 55; 98 S Ct 1670; 56 L Ed 2d 106 (1978) (quotation marks and citation omitted). Whatever local governmental functions the Tribe might fulfill, the Tribe is different in kind from a local government like the city of St. Ignace, which does not have inherent sovereign authority. Tribal government is simply not local government, as that term is used in Const 1963, art 11, § 8.

That the Tribe defies easy characterization lends further support to the finding that its inclusion under the term "local . . . government" would be to reach for a strained interpretation of that term. Because the cornerstone of constitutional interpretation is to seek the common understanding of the people, we therefore find that the Tribe is not a "local . . . government" as that term is used in Const 1963, art 11, § 8.

---

[8] Under this same logic, it would follow that many unitary national governments, being small in size, would also be considered "local" governments. To find that clearly sovereign, foreign nations are *local* governments under Const 1963, art 11, § 8 would truly be an exercise in creative interpretation.

## IV. CONCLUSION

Because we hold that a federally recognized Indian tribe is not "local . . . government" under Const 1963, art 11, § 8, we reverse the judgment of the Court of Appeals.  We also vacate the circuit court order denying plaintiff's motion for summary disposition and remand to the circuit court for further proceedings consistent with this opinion.  We do not retain jurisdiction.

Richard H. Bernstein
Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Elizabeth T. Clement
Megan K. Cavanagh

11

STATE OF MICHIGAN

SUPREME COURT

FRED PAQUIN,

  Plaintiff-Appellant,

v              No. 156823

CITY OF ST. IGNACE,

  Defendant-Appellee,

and

ATTORNEY GENERAL,

  Intervening Appellee.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent. While the majority presents a thoughtful analysis explaining why tribal governments are not "local governments" for purposes of Const 1963, art 11, § 8-- one in which I might otherwise agree because tribal governments exist outside the "local, state, and federal" American constitutional hierarchy-- I believe that this case was rendered moot by the November 2015 election. Consequently, the lower courts and now this Court have erred, in my judgment, in resolving the substantive merits of this case. Accordingly, I would vacate the judgments of the lower courts.[1]

---

[1] See *Mich Chiropractic Council v Office of Fin & Ins Servs Comm'r*, 475 Mich 363, 374; 716 NW2d 561 (2006) (opinion by YOUNG, J.), overruled on other grounds by *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349 (2010) ("Where a lower court has erroneously exercised its judicial power, an appellate court has 'jurisdiction on appeal, not

## I. FACTS AND PROCEEDINGS

In 2010, plaintiff, Fred Paquin, pleaded guilty to conspiracy to defraud the United States by dishonest means, 18 USC 371, and was sentenced to a year and a day in prison. The criminal conduct occurred in his capacity as the chief of police for the Sault Ste. Marie Tribe of Chippewa Indians. He sought to run for a position on the city council of defendant, the city of St. Ignace, in the November elections of both 2013 and 2015. On each occasion, plaintiff was denied the opportunity to do so by defendant's city manager, who concluded that plaintiff was prohibited from holding such position under Const 1963, art 11, § 8 because the tribal government comprised a "local government" for purposes of that constitutional provision.[2] After the second denial, plaintiff filed his complaint for a declaratory judgment against defendant in July 2015. He requested a declaratory judgment providing that Const 1963, art 11, § 8 "does not apply to his former conviction as an appointed police chief of a sovereign Michigan Indian Tribe" and sought the following relief:

---

of the merits, but merely for the purpose of correcting the error of the lower court in entertaining the suit.' "), quoting *United States v Corrick*, 298 US 435, 440; 56 S Ct 829; 80 L Ed 1263 (1936).

[2] Const 1963, art 11, § 8 provides, in relevant part:

> A person is ineligible for election or appointment to any state or local elective office of this state and ineligible to hold a position in public employment in this state that is policy-making or that has discretionary authority over public assets if, within the immediately preceding 20 years, the person was convicted of a felony involving dishonesty, deceit, fraud, or a breach of the public trust and the conviction was related to the person's official capacity while the person was holding any elective office or position of employment in local, state, or federal government.

The City of St. Ignace has an election that is scheduled to occur on or about November 3rd, 2015, and the Plaintiff, Fred Paquin, seeks to have his name placed on said [ballot] as a write in for consideration by the electorate.

In July 2016, well after the November 2015 election, the trial court ruled that plaintiff was not eligible to hold office under Const 1963, art 11, § 8, and in October 2017, the Court of Appeals affirmed. *Paquin v City of St. Ignace*, 321 Mich App 673; 909 NW2d 884 (2017). In May 2018, this Court scheduled oral argument on the application, directing the parties to address "whether the plaintiff's holding elective office with and being employed by an Indian tribe constitutes 'any elective office or position of employment in local, state, or federal government' under Const 1963, art 11, § 8." *Paquin v City of St Ignace*, 501 Mich 1076, 1076 (2018).

## II. ANALYSIS

"The Michigan Constitution provides that the Legislature is to exercise the 'legislative power' of the state, Const 1963, art 4, § 1, the Governor is to exercise the 'executive power,' Const 1963, art 5, § 1, and the judiciary is to exercise the 'judicial power,' Const 1963, art 6, § 1." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 613; 684 NW2d 800 (2004), overruled on other grounds by *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349 (2010). Consequently, "[t]his Court only [possesses] the constitutional authority to exercise the 'judicial power.' " *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012), quoting Const 1963, art 6, § 1. "By separating the powers of government, the framers of the Michigan Constitution sought to disperse governmental power and thereby to limit its exercise." *Nat'l Wildlife Federation*, 471 Mich at 613. "As a term that both defines the role of the judicial branch and limits the

role of the legislative and executive branches, it is clear that the scope of the 'judicial power' is a matter of considerable constitutional significance." *Id*. at 613-614.

The " 'judicial power . . . [pertains to] the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.' " *Anway v Grand Rapids R Co*, 211 Mich 592, 616; 179 NW 350 (1920), quoting *Muskrat v United States*, 219 US 346, 361; 31 S Ct 250; 55 L Ed 246 (1911). "In seeking to make certain that the judiciary does not usurp the power of coordinate branches of government, and exercises only 'judicial power,' both this Court and the federal courts have developed justiciability doctrines to ensure that cases before the courts are appropriate for judicial action." *Mich Chiropractic Council v Office of Fin & Ins Servs Comm'r*, 475 Mich 363, 370; 716 NW2d 561 (2006) (opinion by YOUNG, J.), overruled on other grounds by *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349 (2010). "These include the doctrines of standing, ripeness, and mootness." *Mich Chiropractic Council*, 475 Mich at 370-371 (opinion by YOUNG, J.). "Because these doctrines are jurisdictional in nature, they may be raised at any time and may not be waived by the parties." *Id*. at 371-372. "[T]he doctrines of justiciability . . . affect[] 'judicial power,' the absence of which renders the judiciary constitutionally powerless to adjudicate the claim." *Id*. at 372.

> "It is universally understood by the bench and bar . . . that a moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." [*Anway*, 211 Mich at 610, quoting *Ex parte Steele*, 162 F 694, 701 (ND Ala, 1908).]

4

" '[T]he court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which *cannot affect the result* as to the thing in issue in the case before it.' " *Anway*, 211 Mich at 615, quoting *California v San Pablo & T R Co*, 149 US 308, 313; 13 S Ct 876; 37 L Ed 747 (1893) (emphasis added). "[B]ecause reviewing a moot question would be a purposeless proceeding, appellate courts will sua sponte refuse to hear cases that they do not have the power to decide, including cases that are moot." *People v Richmond*, 486 Mich 29, 35; 782 NW2d 187 (2010) (quotation marks and citations omitted). "Whether a case is moot is a threshold issue that a court addresses before it reaches the substantive issues of the case itself." *Id.*

MCR 2.605(A)(1) sets forth the court's authority to issue a declaratory judgment:

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

"[T]he rule requires that there be 'a case of actual controversy' and that a party seeking a declaratory judgment be an 'interested party,' thereby incorporating traditional restrictions on justiciability such as standing, ripeness, and mootness." *Associated Builders & Contractors v Dep't of Consumer & Indus Servs Dir*, 472 Mich 117, 125; 693 NW2d 374 (2005), overruled on other grounds by *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349 (2010).[3] "In general, 'actual controversy' exists where a declaratory

---

[3] Indeed, MCR 2.605(A)(1) necessarily *must* limit declaratory judgment actions to cases that are justiciable because "the judicial branch cannot arrogate to itself governmental

judgment or decree is necessary to guide a plaintiff's future conduct in order to preserve his legal rights." *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). "This requirement of an 'actual controversy' prevents a court from deciding hypothetical issues." *Id*. at 589.

Here, once the November 2015 election for city council occurred, plaintiff could obviously no longer maintain a candidacy for a position on the city council in 2015. Consequently, the only question before the trial court, the Court of Appeals, and this Court was whether a fraud-related conviction sustained while serving in tribal government triggered the prohibitions of Const 1963, art 11, § 8. This is precisely the type of abstract and academic question of law that is the hallmark of a moot case. That is, after the November 2015 election occurred, a declaratory judgment pertaining to that election could not have affected plaintiff's rights and thus could not have had "any practical legal effect upon a then existing controversy." See *Anway*, 211 Mich at 610 (quotation marks and citation omitted). See also *Tierney v Bay City Union Sch Dist*, 210 Mich 424, 425; 177 NW 955 (1920) ("[T]he election having occurred many months ago, the granting of the injunction prayed for would be an idle act. The case presents simply abstract questions of law which do not rest on existing facts or rights, and is therefore a moot case.").

---

authority that is beyond the scope of the 'judicial power' under the constitution." *Nat'l Wildlife Federation*, 471 Mich at 637.

Nonetheless, there is a limited category of disputes that are not considered moot despite the existence of facts that would otherwise render them moot.[4] This Court has recognized that it "does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us *unless* the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), abrogated on other grounds by *Hearld Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463 (2006) (emphasis added). Unfortunately, our caselaw has been somewhat unclear in addressing the "likely to recur yet evade review" element of the mootness doctrine. In *In re Midland Publishing Co, Inc*, 420 Mich 148; 362 NW2d 580 (1985), this Court suggested that if the legal issue that would otherwise be moot is "likely to recur yet evade review" and might arise with regard to *any* person, then it may nonetheless be reviewed. See *id*. at 152 n 2 ("[I]t appears undisputed that the defendants in the two criminal actions were arraigned on informations on August 1, 1980. Although the issues presented in this appeal thus appear moot, this Court will consider them because they are of public significance and are likely to recur, yet may evade judicial review."). This Court similarly suggested as much in *People v Kaczmarek*, 464 Mich 478, 481; 628 NW2d 484 (2001): "The question in this case is significant because it

---

[4] Although some decisions have suggested that this category of disputes is best understood as an "exception" to the mootness doctrine, I believe it is better understood as a fundamental element of the doctrine itself, such that a case that falls within this category is simply not moot. See *Turner v Rogers*, 564 US 431, 439; 131 S Ct 2507; 180 L Ed 2d 452 (2011), quoting *Southern Pacific Terminal Co v Interstate Commerce Comm*, 219 US 498, 515; 31 S Ct 279; 55 L Ed 310 (1911) ("[T]his case is not moot because it falls within a special category of disputes that are 'capable of repetition' while 'evading review.' ").

involves appellate rights provided by the state constitution and statutes. Yet, it will evade review because others who may raise it, like defendant, also are likely to be on parole by the time their cases reach this Court." However, in *Mead v Batchlor*, 435 Mich 480, 487; 460 NW2d 493 (1990), abrogated on other grounds by *Turner v Rogers*, 564 US 431 (2011), we suggested that the legal issue must be "likely to recur yet evade review" for the *particular* party involved in the case: "Even if it might be said that the contempt order is no longer valid, *defendant* faces the possibility of future contempt proceedings. A disposition based on mootness is not required where the underlying conduct is capable of repetition, yet evades review." (Emphasis added.)

In the absence of clear authority from this Court concerning the proper application of the "likely to recur yet evade review" element of the mootness doctrine, federal caselaw may be instructive. The United States Supreme Court has explained that its own "precedents recognize an exception to the mootness doctrine for a controversy that is 'capable of repetition, yet evading review.' " *Kingdomware Technologies, Inc v United States*, 579 US ___, ___; 136 S Ct 1969, 1976; 195 L Ed 2d 334 (2016), quoting *Spencer v Kemna*, 523 US 1, 17; 118 S Ct 978; 140 L Ed 2d 43 (1998) (quotation marks omitted).[5]

---

[5] In particular, federal courts have consistently held that when a party seeks a declaratory judgment concerning an election law and the election date has passed, the question is ordinarily whether the "capable of repetition yet evading review" aspect of the mootness doctrine applies. See, e.g., *Fed Election Comm v Wisconsin Right to Life, Inc*, 551 US 449; 127 S Ct 2652; 168 L Ed 2d 329 (2007) (addressing in the context of a declaratory-judgment action, the "capable of repetition yet evading review" element of the mootness doctrine after the election date passed); *Hall v Secretary of Alabama*, 902 F3d 1294 (CA 11, 2018) (same); *Missourians for Fiscal Accountability v Klahr*, 830 F3d 789 (CA 8, 2016) (same); *Nat'l Org for Marriage, Inc v Walsh*, 714 F3d 682 (CA 2, 2013) (same); *Libertarian Party v Dardenne*, 595 F3d 215 (CA 5, 2010) (same). Although Const 1963,

"That exception applies 'only in exceptional situations,' " in which "(1) 'the challenged action is in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there is a reasonable expectation that the *same complaining party* will be subject to the same action again.' " *Kingdomware Technologies*, 579 US at ___; 136 S Ct at 1976, quoting *Spencer*, 523 US at 17 (emphasis added; brackets omitted).  See also *Murphy v Hunt*, 455 US 478, 482; 102 S Ct 1181; 71 L Ed 2d 353 (1982) ("[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party.") (citation omitted).[6]  This "same complaining

---

art 11, § 8 is not necessarily an "election law" in the usual sense, it effectively operates as an election law in the instant case.

[6] Even the United States Supreme Court had not been entirely consistent in its historical application of the "same complaining party" rule, although in more recent years it has more consistently applied the rule.  As explained by Justice Scalia:

> In *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), we found that the "human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete," so that "pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied."  *Roe*, at least one other abortion case, see *Doe v. Bolton*, 410 U.S. 179, 187, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973), and some of our election law decisions, see *Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 1249, n. 5, 36 L.Ed.2d 1 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333, n. 2, 92 S.Ct. 995, 998, n. 2, 31 L.Ed.2d 274 (1972), differ from the body of our mootness jurisprudence *not* in accepting less than a probability that the issue will recur, in a manner evading review, between the same parties; but in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur *between the defendant and other members of the public at large* without ever reaching us.  Arguably those cases have been limited to their facts, or to the narrow areas of abortion and election rights, by our more recent insistence that, at least in the absence of a class action, the "capable of repetition" doctrine applies only where "there [is] a 'reasonable

party" rule is part of the "capable of repetition" prong. See *California Coastal Comm v Granite Rock Co*, 480 US 572, 607 n 1; 107 S Ct 1419; 94 L Ed 2d 577 (1987) (Scalia, J., dissenting) ("[F]or a dispute to be 'capable of repetition,' there must be a 'reasonable expectation that the same complaining party [will] be subjected to the same action again.' "), quoting *Weinstein v Bradford*, 423 US 147, 149; 96 S Ct 347; 46 L Ed 2d 350 (1975).

To summarize, under Michigan law, a case is not moot if the issue is likely to recur yet evade review, and it is unclear whether the issue must be likely to recur as to the particular party involved in the case. By contrast, under federal law, a case is not moot if the issue is capable of repetition yet evading review, and the issue generally must be capable of repetition as to the same complaining party.[7] A straightforward comparison of

---

expectation' " that the "*same complaining party*" would be subjected to the same action again. [*Honig v Doe*, 484 US 305, 335-336; 108 S Ct 592; 98 L Ed 2d 686 (1988) (Scalia, J., dissenting) (alteration in original).]

[7] There is some authority to suggest that the "same complaining party" rule in the federal courts may be "relaxed" in the election context. See *Hall*, 902 F3d at 1304 (observing that the United States Court of Appeals for the Sixth Circuit and "[o]ther courts have interpreted the same complaining party rule in a . . . relaxed manner" in the election context). In *Hall*, the United States Court of Appeals for the Eleventh Circuit concluded that the plaintiff's request for a declaratory judgment concerning the constitutionality of an election law was moot after the election occurred. *Id*. at 1296-1297. After acknowledging that some federal circuits have held that the "same complaining party" rule is "relaxed" in the election context, the Eleventh Circuit concluded that "this case is not capable of repetition with regards to [the plaintiff] under any reasonable application of the same complaining party rule." *Id*. at 1305. In April 2019, the *Hall* plaintiff filed a petition for a writ of certiorari in the United States Supreme Court, asserting that "[t]he courts of appeals are intractably divided over whether plaintiffs challenging ballot-access restrictions must satisfy a same-plaintiff requirement to avoid mootness—that is, whether the plaintiffs must show 'a reasonable expectation' that they personally will 'be subjected to the same action again.' "

10

these standards shows that the "likely to recur" prong is the Michigan analogue to the federal "capable of repetition" prong, and the "evading review" prongs are also substantially identical.

In the end, I do not believe it is necessary to resolve whether and to what extent the "same complaining party" rule should apply in the instant case.[8] If the "same complaining party" rule does apply, it is arguable that there might be a reasonable expectation that the "same complaining party"-- namely, plaintiff-- will be subject to the same challenged action in the future. That is, because plaintiff has twice sought an elected position on the city council and twice been denied the opportunity to be placed on the ballot, there is a reasonable expectation that he will again seek that same elected position and again be denied the opportunity to be placed on the ballot. On the other hand, if the "same complaining party" rule does not apply, then it is of course still true that there is a reasonable expectation that *someone*, including plaintiff himself, will be subject to the same challenged action in the future.

I believe that the dispositive inquiry here is whether the "challenged action is in its duration too short to be fully litigated prior to cessation or expiration . . . ." See

---

Petition for Writ of Certiorari at 11, *Hall v Secretary of Alabama*, No. 18-1362 (CA 11, April 29, 2019) (citation omitted). In any event, regardless of whether and to what extent the federal "same complaining party" rule does or does not apply in the election context, the "evading review" analysis is unaffected because, as noted previously, the "same complaining party" rule governs the "capable of repetition" analysis.

[8] In a future case, however, our application of a "same complaining party" rule may be dispositive. Therefore, in such a case, whether to adopt a "same complaining party" rule in our state may warrant this Court's careful consideration.

*Kingdomware Technologies*, 579 US at ___; 136 S Ct at 1976 (quotation marks, citation, and brackets omitted). In this regard, I understand the "challenged action" to be the exclusion from the ballot for a position on defendant's city council, whether the individual excluded is defendant or any other person who might otherwise be eligible, but for the impact of Const 1963, art 11, § 8. That is, because plaintiff is challenging defendant's decision to exclude him from the ballot for city council, the "challenged action" is that decision which concerns ballot access. Elections to the city council are conducted once every two years, and each position is for a four-year term.[9] At a minimum, therefore, the relevant time frame for the "evading review" analysis is two years or perhaps slightly less, given the time required to prepare the ballots. That is, once an election cycle for city council has been completed, a new election cycle begins, and at that point plaintiff or any other person may seek a declaratory judgment concerning his or her right to seek an elected position on the city council in the new election cycle. And two years, in my judgment, is more than sufficient time for such an individual to obtain judicial review of his or her case. An individual may request expedited consideration of the case in the trial court, see MCR 2.605(D), as well as expedited consideration of the case in the Court of Appeals, see MCR 7.211(C)(6), and in this Court, see MCR 7.311(E). Here, for example, had plaintiff not waited until a few months before the November 2015 election to bring his declaratory-

---

[9] The St. Ignace website provides: "Each Council Member serves for a four-year period, alternating elections every two years in conjunction with the Mayoral election. Every two years, one-half (3) of the Council seats are vacated." See City of St. Ignace, *St. Ignace City Council* <https://www.cityofstignace.com/index.php?page=City_Council_General_Info> (accessed June 4, 2019) [https://perma.cc/2AP7-MC3R].

12

judgment action and instead promptly sought relief from the trial court at an earlier juncture, and perhaps sought expedited consideration of his claim, he could, doubtlessly, in my judgment, have secured judicial review of his case.[10]  It can hardly be said, in my

---

[10] Federal courts have also recognized that the fact that an expedited review process was available is appropriately considered in the "evading review" analysis.  See, e.g., *Minnesota Humane Society v Clark*, 184 F3d 795, 797 (CA 8, 1999) ("The Humane Society also could have sought an expedited appeal, a remedy which this court has granted in the past. . . .  When a party has these legal avenues available, but does not utilize them, the action is not one that evades review."); *In re Kurtzman*, 194 F3d 54, 59 (CA 2, 1999) ("Because the Trustee has the ability to seek a stay and an expedited appeal, the retention issue presented by this appeal did not inevitably—and, if it arises again, will not inevitably—lapse into mootness prior to review."); *Disability Law Ctr v Millcreek Health Ctr*, 428 F3d 992, 997 (CA 10, 2005) ("Nor can [the plaintiff's] need for speedy access to records justify the application of the exception to the mootness doctrine.  If in a future dispute [the plaintiff] is concerned its case will become moot because events are moving too quickly, it can request expedited review."); *Hamamoto v Ige*, 881 F3d 719, 723 (CA 9, 2018) ("Plaintiffs have not demonstrated that expedited review would have been unavailable in a case like theirs. . . .  Because we are not convinced that two years and five months is 'almost certain[ly]' inadequate time for a case of this type to receive plenary review by the federal courts, we hold that the 'capable of repetition, yet evading review' exception to mootness does not apply.").  But see *Ralls Corp v Comm on Foreign Investment in the US*, 758 F3d 296, 323 (CA DC, 2014) ("Absent an expedited appeal, which we do not consider in conducting the 'evading review' analysis, a [Committee on Foreign Investment in the United States] order is too short-lived to obtain Supreme Court review and therefore evades review.") (citation omitted).  See also, e.g., in the state context, *Laity v State*, 153 App Div 3d 1079, 1080; 60 NYS3d 572 (2017) ("The exception to the mootness doctrine does not apply inasmuch as this case does not present the type of issue that would typically evade review . . . .  The substantive issue presented would not have evaded judicial review had petitioner timely commenced this proceeding, which would have enabled [the] Supreme Court to hear the case before the presidential primary election and petitioner to take an expedited appeal therefrom."); *Gartner v Missouri Ethics Comm*, 323 SW3d 439, 442 (Mo App, 2010) ("This case does not fall within the public interest exception because the [Missouri Ethics Commission] has failed to show that the issue in this case will likely evade review in a future controversy. . . .  An expedited appellate process is . . . available if timely requested, . . . as is the writ process.").

judgment, that no matter what reasonable alternatives plaintiff might have pursued, his declaratory judgment claim would forever have "evaded review."  Therefore, this case was moot in the trial court, moot in the Court of Appeals, and moot in this Court, and it is not saved by the "likely to recur yet evade review" element.[11]  Although there is no question

---

[11] In its response to this dissent, the majority suggests that I am acting in a "sua sponte" manner; that I am depriving plaintiff of his "day in court"; that I am disregarding the appropriate "burden" of proof; that I am overlooking that it is "rare" to grant motions for mootness; that I am failing to recognize that the present record is insufficient to conclusively establish mootness; and that I am oblivious that the Attorney General herself has specifically "disclaimed" any issue of mootness.  Absent, however, from these observations is any serious acknowledgment that this Court simply lacks the constitutional *authority* to exercise its judicial power when a case or controversy is moot.  "Our authority to hear only cases containing a genuine controversy . . . flows from the structural boundaries delineated in our constitution."  *Mich Chiropractic Council*, 475 Mich at 374 n 24 (opinion by YOUNG, J.); see also *Iron Arrow Honor Society v Heckler*, 464 US 67, 70; 104 S Ct 373; 78 L Ed 2d 58 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.").  That is, it matters *not* that objections of mootness from this dissent have been raised "sua sponte"; that plaintiff would thereby be denied his "day in court" (to which, of course, he would no longer be entitled); that the supposed "burden" of proof has not been satisfied; that it is "rare" to grant, much less sua sponte, a motion for mootness; that the record is allegedly inconclusive (which, even if true, would warrant *further* action by this Court to ascertain whether this case is or is not justiciable); or that the Attorney General or any other party has not on its own raised the same issue.  The question here is not one of prudence or propriety but rather one of threshold authority.

Furthermore, the majority observes that "plaintiff requested a declaratory judgment that Const 1963, art 11, § 8 does not apply to his former conviction," so his "request for relief was not limited to his placement on the ballot for the November 2015 election."  Presumably, the relevance of this observation is to suggest that plaintiff's request for relief is in some manner severable, such that relief may still be granted notwithstanding the occurrence and passing of the November 2015 election, and that this case therefore remains a live dispute.  If so, I respectfully disagree that the purely legal question presented by plaintiff concerning his conviction is logically severable from the fact of the November 2015 election itself and that meaningful relief may still be granted.  To illustrate, consider

14

that it is the role of this Court to resolve legal issues of importance to our state, and this

Court does so today, the absence of a properly justiciable case "renders the judiciary

*constitutionally powerless* to adjudicate" the case. *Mich Chiropractic Council*, 475 Mich

---

*Meyer v Grant*, 486 US 414; 108 S Ct 1886; 100 L Ed 2d 425 (1988). The facts of the case were described by the United States Supreme Court as follows:

> Appellees are proponents of an amendment to the Colorado Constitution that would remove motor carriers from the jurisdiction of the Colorado Public Utilities Commission. In early 1984 they obtained approval of a title, submission clause, and summary for a measure proposing the amendment and began the process of obtaining the 46,737 signatures necessary to have the proposal appear on the November 1984 ballot. Based on their own experience as petition circulators, as well as that of other unpaid circulators, appellees concluded that they would need the assistance of paid personnel to obtain the required number of signatures within the allotted time. *They then brought this action under 42 U.S.C. § 1983 against the Secretary of State and the Attorney General of Colorado seeking a declaration that the statutory prohibition against the use of paid circulators violates their rights under the First Amendment.* [*Id*. at 417 (emphasis added).]

As the highlighted sentence shows, the Court in *Meyer* understood that the appellees sought declaratory relief concerning the validity of an election law under the First Amendment, a purely legal question that transcended the specific occurrence of the November 1984 election. Yet in a footnote to that same sentence, the Court applied the "capable of repetition yet evading review" element of the mootness doctrine to the case, explaining that "[a]lthough the November 1984 election . . . is long past," "it is reasonable to expect that the same controversy will recur between these two parties, yet evade meaningful judicial review." *Id*. at 417 n 2. If a case is not moot because the purely legal question presented in the request for declaratory relief is severable from the election itself, as the majority suggests, then it would have been unnecessary for the Court to address the "capable of repetition yet evading review" element of the mootness doctrine in *Meyer*. And perhaps even more fundamentally, the majority errs by supposing that a justiciable case or controversy can be constructed from a purely abstract legal question-- whether Const 1963, art 11, § 8 is applicable to a conviction sustained while serving in a tribal government-- a matter entirely disconnected from the underlying real-world dispute-- whether plaintiff in his specific circumstances was eligible to run for a position on defendant's city council in November 2015.

15

at 372 (opinion by Young, J.) (emphasis added). In the absence of the constitutional power to resolve this case, the only proper course of action is to refrain from deciding it.

## III. CONCLUSION

To summarize, I believe that this case was rendered moot by the November 2015 election, and the "likely to recur yet evade review" element of the mootness doctrine is inapplicable because the underlying dispute here is simply not predestined to "evade review." Rather, plaintiff originally could have availed himself of expedited review procedures, and he or any other person may do so in the future. This case is therefore simply not properly justiciable. Because courts are constitutionally limited to exercising only the "judicial power," I would not address the substantive merits of this case but would instead vacate the judgments of the lower courts and restore the *status quo ante*.

Stephen J. Markman